PEARSON, MJ

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SHEILA M. HOWARD, | CASE NO. 5:09-CV-00163 |
| Plaintiff, | |
| v. | MAGISTRATE JUDGE<br>BENITA Y. PEARSON |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | **MEMORANDUM OF OPINION AND ORDER** |

Plaintiff Sheila M. Howard sought judicial review of the Social Security Administration's ("Agency" or "Commissioner") final decision denying her application for Disability Insurance Benefits pursuant to 42 U.S.C. § 405(g). The parties have consented to the jurisdiction of the undersigned Magistrate Judge.

Having found that the Agency's denial of benefits decision is based upon properly applied relevant legal standards and is supported by substantial evidence, the Court affirms the Agency's final decision that Sheila M. Howard is not entitled to Disability Insurance Benefits.

**I. Overview**

Plaintiff Sheila M. Howard ("Howard") filed an application for Disability Insurance Benefits ("DIB") on April 5, 2005, with an alleged disability onset date of July 30, 2001. (Tr. 65.) Howard, a high school graduate, was 36 years old as of her alleged onset date, which qualified her as a "younger person," according to 20 C.F.R. § 404.1563(c). (Tr. 18 & 65.) At the time of the administrative hearing Howard was 43 years old and continued to qualify as a

(5:09-CV-00163)

"younger person."  (Tr. 12 & 65.)  Howard alleged disability due to "Mitral valve prolapse, anxiety, depression, panic attacks, fibromyalgia and migraine headaches."  (Tr. 75.)

The Administrative Law Judge ("ALJ") found that Howard "has the following severe combination of impairments: combination of fibromyalgia, kidney stones, hypertension and generalized anxiety disorder (20 CFR 404.1520(c))."  (Tr. 14.)  The ALJ determined, however, that Howard is not disabled because she "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments;" that Howard could perform unskilled sedentary work with a sit/stand option that required only occasional contact/interaction with the public, co-workers or supervisors; and "there are jobs that exists in significant numbers in the national economy that claimant can perform."  (Tr. 14 & 19.)

After reviewing the administrative record as a whole, including the medical records, other evidence presented, all relevant testimony, and the legal standards applied, the Court finds that the ALJ's decision is based upon properly applied relevant legal standards and supported by substantial evidence**.**

 **II.  Procedural History**

Howard filed an application for DIB on April 5, 2005, with an alleged disability onset date of July 30, 2001.  The Agency initially denied Howard's claim and, again, upon reconsideration.  On October 28, 2005, Howard filed a request for an administrative hearing before the ALJ that was held on June 30, 2008, *via* video conferencing technology.  Howard, her counsel and a vocational expert participated during the hearing.  After the ALJ issued a decision denying benefits, Howard requested administrative review of the hearing decision.  The Appeals

(5:09-CV-00163)

Council denied her request for review making the ALJ's decision dated September 11, 2008, the final decision of the Agency. Seeking judicial review of the Agency's final decision, Howard timely filed a Complaint with this Court presenting the following issues:

> Whether the finding that Ms. Howard can perform substantial gainful activity is supported by substantial evidence?
>
> Whether the Commissioner accorded appropriate weight to the report of the treating physician?
>
> Whether the Commissioner's determination's [sic] as to the claimant's credibility and residual functional capacity are supported by substantial evidence?

ECF No. 10 at 2 (citations omitted).[1]

## III. Judicial Review of a Final Agency Decision

Judicial review of the ALJ's decision denying disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the ALJ properly applied relevant legal standards. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence is more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Under 42 U.S.C. § 405(g), the findings of the

---

[1] Although the clarity of Howard's position regarding the ALJ's credibility finding relative to the ALJ's RFC determination is less than ideal, it does not amount to a waiver. She argues, albeit in a different section, that the ALJ improperly discounted her credibility. *See, e.g.*, ECF No. 10 at 13. Given that the ALJ's credibility determination is inextricably intertwined with her RFC determination, the Court will address the ALJ's credibility finding. *Compare with Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (explaining arguments not presented to the district court are abandoned).

(5:09-CV-00163)

ALJ are conclusive if they are supported by substantial evidence.

The substantial evidence standard presupposes that there is a "zone of choice" within which the Agency may proceed without interference from the courts. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*quoting Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir.1984)). The ALJ's decision must be affirmed if it is supported by substantial evidence even if the reviewing court would have decided the matter differently, and even if substantial evidence also supports a different conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen*, 800 F.2d at 545. "Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

In determining the existence of substantial evidence, the reviewing court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981); *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 535 (6th Cir. 2001). The district court may look into any evidence in the record, regardless of whether it has been cited by the ALJ. *Mullen, 800 F.2d at 545*. The reviewing court, however, may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard*, 889 F.2d at 681; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

**IV. Standard for Establishing Disability**

To establish disability under the Act, a claimant must show that he is unable to engage in substantial activity due to the existence of "a medically determinable physical or mental

-4-

(5:09-CV-00163)

impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." *See* 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3)(A). The claimant's impairment must prevent him from doing his previous work, as well as any other work existing in significant numbers in the national economy. *See* 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, Agency regulations prescribe a five-step sequential evaluation. If a claimant can be found disabled or not disabled at any step of the sequential evaluation, the review ends. 20 C.F.R. § 404.1520(a). At Step One, the ALJ considers the claimant's work activity. A claimant is not disabled if engaged in substantial gainful activity, *i.e.*, working for profit. At Step Two, the ALJ considers the medical severity of the claimant's impairments. A claimant is not disabled if she does not have a severe medically determinable physical or mental impairment that also meets the duration requirement in 20 C.F.R. § 404.1509, or a combination of impairments that are severe and meets the duration requirement. At Step Three, the ALJ determines whether the claimant has an impairment that meets or equals one of the criteria of an impairment listed in Appendix 1 and meets the duration requirement. *See* 20 C.F.R. § Part 404, Subpart P, Appendix 1. A claimant is disabled if she has an impairment that meets the listing and the duration requirement. Before considering the fourth step, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), *i.e.*, the claimant's ability to perform physical and mental work on a sustained basis despite limitations from impairments. At Step Four, the ALJ considers whether the claimant's RFC permits him to perform past relevant work. The claimant bears the burden of proof at steps one through four.

(5:09-CV-00163)

*Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). At Step Five, however, the burden shifts to the Commissioner to identify "a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

At the final step, Step Five, the ALJ considers the claimant's RFC and his age, education, and work experience to determine whether the claimant may work. Even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, then the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *see also Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (describing five-step evaluation).

The claimant bears the ultimate burden of proof on the issue of disability. *See* 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"); *Richardson v. Heckler*, 750 F.2d 506, 509 (6th Cir. 1984) ("A social security disability claimant bears the ultimate burden of proof on the issue of disability."). The burden of proof regarding the establishment of disability onset date also lies with the claimant. *McClanahan v. Comm'r of Soc. Security*, 474 F.3d 830, 836 (6th Cir. 2006). At Step Five of the sequential evaluation, the Agency has the burden of producing evidence of available work that the claimant can perform. *See* 20 C.F.R. § 404.1512(a); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("the Secretary bears the burden of proof at step five, which determines whether the claimant is able to perform work available in the national economy").

The claimant has the burden of providing detailed medical evidence allowing the ALJ to

(5:09-CV-00163)

make an informed decision. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). The claimant must not only produce a diagnosis of an impairment, but also demonstrate correlative functional limitations. 20 C.F.R. § 404.1512(c).

## V. Analysis

### A. The ALJ's Evaluation of the Medical Opinion Evidence is Supported by Substantial Evidence and Comports with Sixth Circuit Case Law

Howard alleges that the ALJ violated the treating physician rule when she "rejected the opinion of Dr. Ahmed regarding Ms. Howard's physical limitations" and because "Dr. Drake's opinion" regarding her mental impairments "should [have been] given controlling weight." ECF No. 10 at 12 & 14. The Court addresses each allegation of error below.

#### 1. The Treating Physician Rule, Generally

It is axiomatic in Social Security law that the opinions of doctors identified as treating physicians are given greater weight than that attributed to other medical care providers. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir.1980); *see also* SSR 96-2p; 20 C.F.R. § 404.1527(d)(2). Treating physicians' opinions are entitled to controlling weight under the treating physician rule as long as they are (1) well supported by medically acceptable data and (2) not inconsistent with other substantial evidence of record. *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); 20 C.F.R. § 404.1527(d)(1); SSR 96-2p. If the ALJ does not give the treating physician's opinion controlling weight, then the ALJ must consider several other factors in determining how much weight is appropriate. Those factors include: (1) the length, frequency, nature, and extent of the treatment relationship; (2) consistency of the physician's conclusions and the evidence to support them;


(5:09-CV-00163)

and (3) the specialization of the treating physician. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007). The rule also creates "a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding." *Id.* (*citing* SSR 96-2p).

An additional procedural requirement of the treating physician rule is that the ALJ must provide "good reasons" for discounting a treating physician's opinion with reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p; *see also Wilson*, 378 F.3d at 544. The significance of this notice requirement is that it ensures that a claimant denied benefits receives fair process. An ALJ's failure to follow this requirement of providing good reasons "for explaining precisely how those reasons affected the weight accorded the [physician's] opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243 (*citing Wilson*, 378 F.3d at 544). The Court evaluates the ALJ's conclusions regarding Howard's treating physician's opinion against these standards.

### a. The ALJ Gave Dr. Ahmed's Opinion Appropriate Weight

The parties do not dispute Dr. Ashraf Ahmed's status as a treating physician. Howard argues that "to the extent that the ALJ rejected Dr. Ahmed's opinion because there is a lack of objective findings, [the ALJ's decision] should be reversed." ECF No. 10 at 12. Howard also contends that the ALJ's rejection of Dr. Ahmed's opinion is unlawful according the Sixth Circuit's teachings in *Rogers*. ECF No. 10 at 12. Despite Howard's contentions, a review of the

-8-

(5:09-CV-00163)

record supports the ALJ's decision to give Dr. Ahmed's medical opinion less than significant weight.

At the threshold, it is important to note that the ALJ did not "reject" Dr. Ahmed's opinion. Rather, after considering it and finding that "the doctor did not provide an explanation for [the ascribed] limitations and the objective evidence does not support such restrictions," the ALJ appropriately considered the opinion of Dr. Ahmed and, based upon evidence in the record, attributed it less than "significant" or controlling weight. (Tr. 17.)

Dr. Ahmed, a physician specializing in internal medicine, completed a form describing Howard's "ability to do work-related activities (physical)" on June 11, 2007.[2] (Tr. 542-45.) Dr. Ahmed determined that Howard could lift and carry a maximum of 20 pounds occasionally and 10 pounds frequently; had the ability to stand, walk, and sit (with normal breaks) about 2 hours during an 8-hour day; could sit and stand for 15 minutes before changing position; must walk around for 15 minutes every 15 minutes; must have a sit/stand option at will and need to lie down at unpredictable intervals during a work shift; could never twist, stoop, crouch, and climb stairs or ladders; and lastly, reaching, handling, fingering, feeling and pushing/pulling were not affected by her impairments.[3] (Tr. 542-44.) The form provided a section especially for Dr. Ahmed to

---

[2] The Court notes that the ALJ incorrectly wrote the date of Dr. Ahmed's report as June 11, 2008. (Tr. 17.) The correct date is June 11, 2007. (Tr. 542-545.) The ALJ's error is understandable because it appears that Dr. Ahmed wrote "6/11/8" near his signature. All other indications however, including stamps on each page of the report and a notation on page one – "6/11/07 from Dr. Ashraf Ahmed" – show June 11, 2007 as the correct date. This discrepancy is noted for the clarity of the record but not dispositive of any issue.

[3] Dr. Ahmed did not respond to questions regarding Howard's environmental restrictions, any other work-related restrictions, *e.g.*, need to elevate legs or limitations related to

-9-

(5:09-CV-00163)

identify his medical findings in support of Howard's limitations. (Tr. 543 at Item 7: "What medical findings support the limitations described above?".) Dr. Ahmed left that section blank. (Tr. 543.) The ALJ relied upon that omission, in part, for not attributing Dr. Ahmed's limitations controlling or significant weight. (Tr. 17.) Finding insufficient evidence within Dr. Ahmed's written report, the ALJ looked to other objective evidence and still did not find support for the restrictions detailed in Dr. Ahmed's opinion. (Tr. 17-18.)

### b. The ALJ Gave Dr. Drake's Opinion Appropriate Weight

Howard complains that "in cases of mental impairments, the lack of objective findings cannot be used [by the ALJ] to reject the report of the treating physician,"psychiatrist Pamela Drake, M.D. ECF No. 10 at 13. Howard also argues that the ALJ did not provide good reasons for not giving Dr. Drake's opinion controlling weight. ECF No. 10 at 14.

As with Dr. Ahmed's opinion (discussed above), the ALJ did not "reject" Dr. Drake's opinion. Rather, the ALJ appropriately gave Dr. Drake's opinion less than significant or controlling weight after considering it and finding that the doctor had not provided a sufficient explanation for the limitations attributed to Howard and the objective evidence, including the doctor's treatment notes, did not support Dr. Drake's restrictions. (Tr. 17.)

The opinion at issue stems from a questionnaire completed by Dr. Drake on November 3, 2005. (Tr. 432-34.) In the questionnaire, Dr. Drake indicated that, among other things, Howard's ability to understand; remember and carry out detailed instructions; maintain attention or regular attendance; get along with coworkers; and complete a normal workday; and workweek

---

mental impairments, or how often Howard's impairments would cause her to miss work.

-10-

(5:09-CV-00163)

without interruption was "poor or none." (Tr. 432-34.) Dr. Drake predicted that Howard's impairments would cause her to be absent from work more than three times a month. (Tr. 434.) Along those lines, Dr. Drake wrote: "Pt is unable to function well enough to get herself to an employment setting, *e.g.* she is unable to go to the grocery store to purchase food; supplies; or unfamiliar areas." (Tr. 434.) The ALJ found that Dr. Drake, like Dr. Ahmed, did not sufficiently explain her findings. (Tr. 17.) The ALJ discounted Dr. Drake's opinion because it lacked the support of objective evidence. The ALJ also found that Howard's subjective complaints were not credible. (Tr. 18.) This credibility determination is discussed in more detail below.

     The ALJ did not violate the treating physician rule regarding Dr. Drake's opinion. The ALJ correctly found that Dr. Drake's opinion and accompanying treatment notes, which also covered the "longitudinal picture" of the doctor-patient relationship, do not support the severity of the limitations described in the questionnaire the doctor completed on November 3, 2005. 20 C.F.R. § 404.1527(d)(2). Accordingly, the ALJ provided "good reasons" for discounting Dr. Drake's opinion.

     Howard claims that her own testimony and the notes of a social worker, Dr. Anne Lewis-Nash, are consistent with and, therefore, support Dr. Drake's limitations. ECF No. 10 at 13. The record does not support Howard's contentions for at least two reasons. First, the ALJ found Howard's testimony not credible. Second, the record reflects that the notes of Dr. Lewis-Nash are sometimes inconsistent with Dr. Drake's notes for the same time period and, when consistent,

(5:09-CV-00163)

portray Howard in an improved mental state, not debilitated as etched by Dr. Drake.[4]

For instance, Dr. Drake's notes from May 10, 2007, report Howard saying "this is the best I've felt in a long time." (Tr. 422.)  Dr. Drake reported Howard's mood was more stable and her family members commented on her improvement.  (Tr. 422.)  Just days before, however, on May 4, 2007, during an appointment with Dr. Lewis-Nash, Howard rated her mood a 4 on a scale of 10, with ten being the best.  (Tr. 549.)  At the end of the month, on May 30, 2007, Dr. Drake reported that Howard rated her mood a nine (9) out of ten (10).  (Tr. 548.)  Howard confirmed her positive mental state to Dr. Drake on May 31, 2007: " I feel pretty good taking it [*i.e.*, a prescribed drug, Cynobal...]." (Tr. 435.)  That same day, Dr. Drake also reported that Howard's mood was improved, her motivation better, and she was not staying in bed all day.  (Tr. 435.)  In her intermittent June, July and October 2007 appointments with Dr. Lewis-Nash, Howard rated her mood a 6, 6, and 7, respectively.  (Tr. 548.)  Within this same period of time, August 7, 2007, however, Howard again told Dr. Drake that she felt the "best she'd felt in a long long time," was sleeping, had no racing thoughts, and stressors were manageable.  (Tr. 582.)

The record belies Howard's claims that "[t]here is no contrary evidence" to Dr. Drake's statement.  ECF No. 10 at 13.  Howard's own assessment of her mental health and the notes of Drs. Drake and Lewis-Nash, on balance, contradict Dr. Drake's overall opinion.  Even when evaluated in the light most favorable to Howard, Dr. Drake's treatment notes show some fluctuation, but general improvement in Howard's mental impairment.  The notes of Dr. Lewis-

---

[4] Dr. Lewis-Nash's notes document appointments with Howard over a 3-month period during 2007.  Dr. Drake completed her questionnaire in 2005 but apparently continued treatment noting Howard's improvement.

(5:09-CV-00163)

Nash are equally as positive. Most importantly, the record does not contain substantial evidence to support Dr. Drake's bleak opinion and, in particular, the severity of the limitations ascribed.

The ALJ did not commit error by attributing Dr. Drake's and Dr. Ahmed's opinions less than significant or controlling weight. The ALJ's determinations are supported by the record. If this were a close call, the ALJ's determination would certainly be within the Commissioner's zone of choice with which the Court would not interfere. *See Mullen*, 800 F.2d at 545; *see also Her*, 203 F.3d at 389-90 (explaining that an ALJ's decision must be affirmed if it is supported by substantial evidence even if the reviewing court would have decided the matter differently, and even if substantial evidence also supports a different conclusion).

### 2. Howard's Credibility Based upon the Entire Record

As the ALJ summarized, if objective medical evidence fails to support a claimant's complaints regarding the intensity, persistence or functionally limiting effects of pain or other symptoms, the ALJ must then evaluate the credibility of the statements in light of the entire record. After finding that objective evidence and other evidence in the record did not support the limiting effects of the physical and mental impairments of Drs. Ahmed and Drake, the ALJ appropriately turned to Howard's credibility.

To facilitate this overall evaluation, the Sixth Circuit has created a two-part test to evaluate subjective complaints of pain. *See Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir.1986). According to *Duncan*, the ALJ should initially determine "whether there is objective medical evidence of an underlying medical condition." *Id.* If so, then the ALJ determines "whether objective medical evidence confirms the severity of the alleged pain arising

-13-

(5:09-CV-00163)

from the condition; or . . . whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." *Id.*

Title 20 C.F.R. § 416.1529(c)(1) provides: If the medical signs or laboratory findings show that a claimant has a "medically determinable impairment that could reasonably be expected to produce" his or her symptoms, such as pain, then the Commissioner evaluates the intensity and persistence of the claimant's symptoms to determine how the symptoms limit the claimant's capacity for work. In conducting such an evaluation, the Commissioner considers objective medical evidence and other evidence. In particular, the Commissioner may consider the claimant's history, the signs and laboratory findings, statements from the claimant, his or her treating or non-treating source, or other persons, and medical opinions. Social Security Regulation 96-7p further instructs that "[t]he finding on credibility of an individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility."

Due to the evasive nature of fibromyalgia, one of Howard's severe impairments, subjective pain complaints play a heightened role in the diagnosis and treatment of the condition. *Rogers*, 486 F.3d at 245. Determining and providing justification for and discounting or crediting a claimant's statement assumes paramount importance. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985).

In the instant case, the ALJ followed the protocol established in *Duncan*: Because Dr. Ahmed did not provide explanations for Howard's restrictions, the ALJ, as an alternative, correctly turned to the objective medical evidence for support of Dr. Ahmed's opinion. The ALJ

-14-

(5:09-CV-00163)

found that the objective evidence did not provide support for Dr. Ahmed's restrictions.[5] (Tr. 17.) The ALJ then considered the claimant's credibility, *i.e.*, the claimant's subjective complaints of pain, as required when confronted with a fibromyalgia diagnosis. The ALJ found Howard's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment . . . ." (Tr. 16 -17.)

The Sixth Circuit has found that when confronted with a fibromyalgia diagnosis, "opinions that focus solely upon objective evidence are not particularly relevant." *Rogers*, 486 F.3d at 245. Nonetheless, "'[s]ubjective complaints of 'pain or other symptoms shall not alone be conclusive evidence of disability.'" *Arnett v. Comm'r of Soc. Sec.*, 76 Fed. Appx. 713, 716 (6th Cir. 2003) (internal citation omitted). Moreover, "a *diagnosis* of fibromyalgia does not automatically entitle [a claimant] to disability benefits . . . ." *Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 806 (6th Cir. 2008) (emphasis in original) (*citing Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("Some people may have a severe case of fibromyalgia as to be totally disabled from working . . . but most do not and the question is whether [claimant] is one of the minority.") (citations omitted)).

The ALJ's decision to not give the treating physicians' restrictions controlling weight and overall finding of "not disabled" was appropriately informed by his credibility determination; it did not rest exclusively on a lack of objective evidence as Howard contends. The ALJ weighed

---

[5] Treatment notes of Howard's ability to do work-related activities do not support the level of restrictions asserted in his opinion. (Tr. 456-527.)

-15-

(5:09-CV-00163)

Howard's allegations of incapacitation due to anxiety and alleged physical limitations with detailed inconsistencies such as: (1) her ability to shop, visit fast food businesses, and attend her son's graduation; (2) her ability to do household chores, use a computer and drive; (3) a March 2006 examination that revealed a full range of motion and cardiac testing that discounted the existence of a mitral valve prolapse. (Tr. 18.)

### B.  Substantial Evidence Supports the ALJ's Residual Functional Capacity Determination

Howard's argument that the ALJ's Residual Functional Capacity determination is not supported by substantial evidence because the ALJ "cites no medical evidence to support" her Residual Functional Capacity finding is without merit. ECF No. 10 at 14.

A claimant's Residual Functional Capacity is an indication of that individual's work-related abilities despite her limitations. *See* 20 C.F.R. § 404.1545(a)(1). A claimant's Residual Functional Capacity is not a medical opinion, but an administrative determination reserved to the Commissioner. *See* 20 C.F.R.§ 404.1527(e)(2). As such, the ALJ bears the responsibility for assessing a claimant's Residual Functional Capacity, based on all of the relevant evidence. *See* 20 C.F.R. § 404.1545(a)(3). Under 42 U.S.C. § 405(g), the findings of the ALJ are conclusive if they are supported by substantial evidence. The substantial evidence standard presupposes that there is a "zone of choice" within which the Agency may proceed without interference from the courts. *Mullen*, 800 F.2d at 545 (*quoting Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir.1984)). The ALJ's decision must be affirmed if it is supported by substantial evidence even if the reviewing court would have decided the matter differently and substantial evidence also supports a different conclusion. *See Her*, 203 F.3d at 389-90; *Mullen*, 800 F.2d at 545.

(5:09-CV-00163)

In her opinion, the ALJ explained that she made her Residual Functional Capacity determination "[a]fter careful consideration of the entire record." (Tr. 15.) The Court has no basis to disbelieve the ALJ's statement.

The ALJ's Residual Functional Capacity determination considers both Howard's physical and psychiatric limitations caused by her impairments. A review of the record reveals substantial evidence supports the ALJ's Residual Functional Capacity determination. In addition to that discussed above relative to the objective evidence of the treating physicians, the record reveals the following in support of the ALJ's Residual Functional Capacity determination.

Regarding Howard's physical impairments, Inderjet Brar, M.D., (a consulting physician), examined Howard and completed an evaluation on May 16, 2005 at the Agency's request. (Tr. 318-21.) Dr. Brar concluded: "[Howard's] ability in general to do physical activities such as sitting, walking, lifting, carrying weights, handling objects, hearing, speaking and traveling does not seem to be significantly limited." (Tr. 321.) The ALJ's Residual Functional Capacity is consistent with Dr. Brar's opinion. The ALJ cited Dr. Brar's opinion at least three times in her written opinion. (Tr. 17-18.) Dr. Brar's opinion provides substantial evidence to support the ALJ's Residual Functional Capacity with respect to Howard's physical capabilities.

Regarding Howard's psychiatric limitations, the Agency requested a psychiatric assessment that Ms. Joan Williams completed on June 13, 2005. (Tr. 346-59.) Ms. Williams indicated that Howard's functional limitations with respect to the "paragraph B" criteria of the listings were mild in restrictions of activities of daily living and difficulties in maintaining social functioning, concentration, persistence or pace and that she had no limitation for episodes of

(5:09-CV-00163)

decompensation.  (Tr. 356.)  Ms. Williams concluded her assessment stating that "despite occasional brief intensification of symptoms, the degree of functional disruption from mental impairment in this case is not severe."  (Tr. 358.)  Ms. Williams' findings are consistent with Dr. Drake's treatment notes as of the same date, *e.g.*, stable or improving mood.  *See* (Tr. 435-40.)  Tonnie A. Hoyle, Psy.D., reviewed Howard's file and Ms. Williams' assessment and affirmed Ms. Williams' findings on September 6, 2005.  (Tr. 346.)

The ALJ's "paragraph B" findings, or rating of the severity of Howard's mental impairments, are consistent with or more restrictive (*i.e.*, more protective of Howard) than Ms. Williams' and Dr. Hoyle's findings except that the ALJ found no restriction in Howard's activities of daily living.  (Tr. 15.)

The findings of Ms. Williams and Dr. Hoyle joined with the objective evidence and the credibility analysis discussed earlier supports the ALJ's Residual Functional Capacity determination.

## VI. Conclusion

The ALJ did not run afoul of the treating physician rule or *Rodgers*.  Substantial evidence exists to support the ALJ's Residual Functional Capacity and overall determination of "not disabled."  The ALJ properly evaluated the medical opinion evidence, including the opinions of Howard's treating physicians.

For all of the reasons given above, the Court finds that the ALJ's decision that Sheila M. Howard was not disabled and, therefore, not entitled to Disability Insurance Benefits is based upon proper legal standards and supported by substantial evidence.  Accordingly, the ALJ's

(5:09-CV-00163)

decision denying benefits is AFFIRMED.

   IT IS SO ORDERED.

 March 12, 2010                  s/ *Benita Y. Pearson*
Date                        United States Magistrate Judge